We will hear argument first this morning in case 24557, Villarreal v. Texas. Mr. Banner. Mr. Chief Justice, and may it please the Court, during an overnight recess, the defendant and his counsel have a lot that they need to talk about. They need to go over the testimony that took place that day, they need to prepare for the testimony that's going to be given the next day. These are basic discussions that any competent lawyer would have with the client. This is the assistance of counsel that the Sixth Amendment guarantees. But the defendant and counsel can't have these conversations if they're not allowed to discuss the defendant's testimony. For example, if the defendant's testimony has gone poorly, counsel may need to advise the defendant to accept a plea agreement. The counsel can't do that without discussing the defendant's testimony. The defendant needs advice about how to testify without violating the trial court's evidentiary rulings. The counsel can't give this necessary advice without discussing the defendant's testimony. Counsel has an obligation to prevent the defendant from committing perjury, but that would be impossible without discussing the defendant's testimony. Our brief has many more examples, but the point is that the defendant and counsel often must discuss the defendant's testimony during an overnight recess. Now, the court below tried to distinguish between discussions of trial strategy, which it allowed, and discussions of testimony, which it prohibited, but that's no line at all. It's often impossible to discuss trial strategy without discussing testimony. And responsible defense lawyers worried about being held in contempt for crossing this invisible line will be chilled from offering the assistance that the defendant needs and that the Sixth Amendment guarantees. The only conceivable rationale for restricting overnight discussion between defendant and counsel is to prevent impermissible coaching. But as the court explained in Getters, there are other ways to prevent coaching. There's no need to prohibit the defendant and counsel from discussing the defendant's  I invite the court's questions. In the judge's instructions, he says, I don't want you discussing what you couldn't discuss with him if he was on the stand in front of the jury. What's wrong with that? Because if he was on the stand in front of the jury, you wouldn't be, they wouldn't be allowed to discuss. He's saying, I don't want you discussing anything that you couldn't discuss involving his testimony before it, uh, the jury. That's the standard for, uh, the, what's permitted and not permitted at that evening. Okay, well, the, the, the trial court, if you read, if you read the entirety of the trial, the colloquy between the trial court and defense counsel, it's, it's clear enough that the trial court prohibited all discussion of testimony, the defendant's testimony during the overnight recess. And that is how the Texas Court of Criminal Appeals interpreted it. So the, the Court of Criminal Appeals, Court of Criminal Appeals, uh, uh, interpreted the, uh, the, I'm going to get the word exact, wording exactly right from the, uh, from the court's opinion. And, uh, the court, the Court of Criminal Appeals said, they described the question presented as, does a trial judge's sua sponte order that defense counsel could confer with the offender on everything except his ongoing testimony violate the defendant's Sixth Amendment counsel? So would it violate the defendant's Sixth Amendment right, uh, to counsel if, uh, the, the, uh, during, uh, trial, he was, uh, precluded from, uh, being coached or managed by the, uh, his attorney? You mean during an overnight recess? No, during trial. Oh, during trial. No, during trial.  Under, under Perry, well, Perry drew a sharp line between overnight recesses and brief daytime recesses. The, the, and the court said that during a brief daytime recess, like, like I think you're talking about here. But what I'm talking about is why is the standard different between, uh, what a lawyer can coach or manage with respect to testimony while he's on the stand, which is basically, uh, a concern and, uh, what he can coach or manage, uh, during the recess. No, it's, it's the same. The, the, the, the distinction, let's be clear about the distinction between impermissible coaching and legitimate and necessary counseling, right? Because that's a sharp line. And in answer to your question, that line is the same at all times during the proceeding. That is whatever is impermissible before trial begins is also impermissible during an overnight recess. It's impermissible at any time. And let's talk about what that difference is, right? So the, the impermissible coaching is where a, the, the, the, the lawyer, uh, uh, uh, tries to get a witness, the defendant or any other witness, to testify to, where the lawyer tries to change the substance of the witness's testimony, to try to get the witness to testify to something other than that which the witness believes to be true. Uh, uh, the court, but contrast that with conventional counseling, which is talking about the, the testimony in all other contexts. So for example, uh, uh, advising how to comply with evidentiary rulings. Even, even, um, even rehearsing the questions and answers. But did any of that happen here? Uh, do we have evidence that any of that happened? But it couldn't have happened. It didn't happen because the trial court barred the defense counsel from discussing, uh, Mr. Villarreal's testimony with him during the overnight recess. Counsel, if you, um, one of the things you say could protect against any problems with your approach and looking at page 14 of your brief, you say that the prosecutor could cross examine the defendant after, after the, when the trial picks up again the next day as to the extent of any coaching. Isn't that a real problem with respect to the attorney-client privilege? What is the prosecutor going to say? Okay. You had a break. You spent the evening with counsel. What did you talk about? Objection, Your Honor. Attorney-client, see how, I don't see how that could be a reasonable, uh, counterweight to the problems. Uh, I understand what you're saying. The, the, the, the attorney-client privilege has never been understood to insulate a defendant or any witness from being cross examined about the extent of impermissible coaching. So the, the, the, the, the dialogue would go, well, didn't your lawyer tell you to say that? No, no, he didn't. Or, or yes, he did or something like that. What did he tell you to say? You say, well, didn't your lawyer tell you to say that or whatever? And he says, no. He said, well, what did he tell you to say? Or what did he tell you to change? The, the court in Getters said, and we're, we're merely following that, that, uh, the way, the way to, uh, uh, deter impermissible coaching is for the prosecutor to cross examine the defendant about it. Now you're right, you're right that, uh, to say that functionally, it seems like it might raise the same, same sorts of privilege problems as having the court ask it, but that's what the court said in Getters and not just Getters, subsequent cases as well, that the appropriate with two appropriate ways to deter impermissible coaching. One is cross examination by, by opposing counsel. And the other is just for the trial court to manage the, the, the schedule appropriately, do some, you know, uh, give some foresight to how long the, the defendant's testimony is going to last. And if the, if the court is worried about, uh, uh, impermissible coaching, just delay the overnight recess. I guess I don't understand why you're so focused on impermissible coaching as you have defined it. Uh, you say here, and you say in your briefs that incommit impermissible coaching is where the lawyer is trying to get the witness to change his testimony or whatnot, and that was impermissible both before and after and during all that sign, right? That is not what I understood to be the concern here. Uh, going back to justice Thomas's point, um, the management of testimony, the, uh, talking with the witness about his answers and, uh, what some people would call coaching, prepping your witness can occur beforehand, right? That's what it can't occur while the witnesses on the stand. So justice Thomas, I think is pointing to a critical point, which is to the extent that the lawyer couldn't manage, coach, prep, practice with the lawyer, with the witness while he's on the stand, why should he be allowed to do so during an overnight recess? This, this is straight out of Perry, straight out of Perry. So the court, the court, uh, in Perry said that, uh, uh, during a, uh, a brief daytime recess, the, the, the, the court, the, the, the trial court can prevent all contact between, uh, the defendant and counsel. I understand. I'm focusing on the content of the trial. No, I understand. I understand. But there's this, I'm getting to that, right? So the, the court said that, uh, uh, after explaining all that for a brief daytime recess, the court then in the, in the next section, section, section, uh, uh, uh, three of, of Perry, the court says, well, overnight recesses are completely different. The court says, uh, admittedly, the line between the facts of getters, that's an overnight recess, and the fact that this case is a thin one. It is however, a line of constitutional dimension. The court goes on to say during an overnight recess, it is the defendant's right to unrestricted unrestricted access to his lawyer for advice on a variety of trial related matters that's controlling. And here's the key sentence. Is the fact that such discussions will inevitably include some consideration of the defendant's ongoing testimony does not compromise. That's precisely what I'm getting at. Um, I think there might be, and I want you to help me with this difference between, um, discussions that take into account the testimony, maybe even the fact of the testimony and something that one could call managing, pressing, or, uh, you know, the kind of thing that you have even admitted a lawyer does legitimately to help his client before he takes the stand. And what I understood the trial court here to be doing was just eliminating that very narrow category of conduct, uh, that a lawyer engages in to actually prepare his witness with respect to particular questions and answers on that. And that's the line, the court of criminal appeals tried to draw right between discussion of what you, what you're calling, uh, prepping the testimony and discussion of testimony in other contexts. And why are they wrong about that? Because that, that line just, I mean, to even call it a line is wrong. It's not a line that it's a Rorschach plot. But that's the line that Perry drew. I mean, if you go up a few sentences from the sentence that you read, uh, the court says, you know, an overnight witness, an overnight recess is different. Why is it different? Um, because an overnight recess will go to matters that go beyond the content of the defendant's own testimony matters that the defendant does have a constitutional right to discuss with his lawyer, suggesting that as to only the defendant's own testimony, the defendant does not have a constitutional rights to discuss with his lawyer. Now, then it talks about how, of course, when you talk about the protective matters, there might be some incidental discussion of the testimony itself. So it concedes that perfectly willingly, but it draws a pretty sharp line between matters going to trial strategy and matters going to trial testimony of the defendant itself and says that that's the reason why the recess of the overnight recess versus 15 minute recess makes a difference. And like I said, that's no line at all. And the way you can, but that's Perry's line. I mean, it might be that Perry was wrong, but that's Perry's line. No, I disagree. Perry, Perry, again, Perry, Perry goes on to say that a defendant has an unrestricted right of access to his lawyer during an overnight recess, including for consideration of the defendant's testimony. So let me, let me get, so it's, you're, you're drawing, you're trying to draw the same line at the court of criminal appeals. I'm not trying to draw it. I'm suggesting that Perry says it right here on page 284, that that's the key language from Perry. Now, Perry goes on to say, as I think your friend in Texas goes on to say that there can be all kinds of places where the testimony has to be talked about as incidental to what is protected, which is the discussion of trial strategy, but not in and of itself. Okay. First of all, I, I disagree respectfully with, with your view of what, of what Perry held, but if Perry held that, I think it's, I think it's just incorrect, right? So let's, let's work through some examples. So, so the, before, before the overnight recess in his, in his testimony, the defendant has come, an unsophisticated defendant has come very close to mentioning excluded evidence that would be, that would be absolutely devastating. During the, the, the overnight recess, defense counsel needs to say to the defendant, you clearly mentioned this, this, this evidence, look, when we resume again tomorrow, you better remember not to mention that because we're, we're going to be in big trouble if you, if you, if you, if you mentioned that tomorrow. Okay. Is that, is that consideration or is that the discussion? I think maybe I'm missing something, but I would think that would be permissible because it doesn't refer to the testimony itself. It can simply be a reminder. Hey, don't, don't go here. Um, that might implicate, but it does, it does refer to, if I might finish, if I might finish, I think what my colleagues are getting at and what I kind of thought you even conceded in your brief is that coaching, and I, maybe we were defining coaching differently, perhaps that's it, but that there are some things that a district court can constitutionally prohibit, uh, counsel from doing. And while, while a witness is on the stand, even if there's a recess, you agree with that, right? You think there are some things that can be prevented? Coaching in the sense of suborning perjury, altering the substance of the witness. I'm not talking about suborning perjury. I'm talking about coaching. Well, but, but if you don't like that word, let's use management. Okay. Which is the word Texas. I like that word even less.  Why, what, what, what in the constitution, what in history suggests that you have a right to manage a witness's testimony, um, during a break, um, as opposed to derivative or collateral matters that you do need to advise them on. There's a plea agreement and the way things gone today, maybe we've got to take that plea. Um, but there, there's some excluded evidence. Be careful not to step into that. I can see all those kinds of comments, but I'm, I'm having a hard time understanding historically, traditionally, what has he got that says that there's a right of a witness to, to be coached, or if you don't like that word managed by his attorney while he's not on the stand, whatever the length of it. So let's, let's talk about the, the, the, the history. So that the precise question presented in this case could not have arisen at the founding because defendants weren't allowed to testify until the late 19th century. Right. And so the question is, what's the appropriate inference to be drawn from historical practice? And in historical practices that once you become a witness, you, you are generally subject to the rule that you can't talk about your testimony. And that's generally understood to mean coaching and managing, but not advice about other legal matters. That that's, that's my understanding. I've got, I've got three points I'd like to make about the history. Okay. First of all, it's crystal clear at the, at the founding and all, all, all the way till now, that while the defendant, there are times when the defendant can certainly be denied access to counsel, when he does have access to counsel, he has a right to whatever assistance, including discussion of testimony will be, will be, will be useful to him. Right. So the, there's, there's, there's, while there's certainly historical warrant as the government points out, both, both governments point out, there's certainly historical warrant for saying, but there are times when a defendant lacks access to  So, you know, in a prison in the middle of the night or something like that. Sure. But there's no historical warrant for saying that when a defendant does have access to counsel, the trial court can say, well, you can talk about topic A, but you can't talk about topic B. Would your rule apply to witnesses who have counsel? No, no, no. Because non-party witnesses, they don't have a Sixth Amendment right that a, that a defendant has. This is a rule specific to the defendant. Well, they have a right to counsel and they brought counsel. During a criminal, a right to counsel during a... Would it apply as well in civil proceedings? No, no, no, no, no. To the defendant there? No, no, no, no, no. A trial court can sequester non-party witnesses. This case isn't about that. This case is about, about the defendant as a witness. In civil, in civil proceedings where there's a right to counsel, presumably? Yeah. It would apply there. I don't know. I mean, the, the... It's just that there's a long historical tradition of witnesses going on the stand being told something like what the trial court said. Non, non, non-defendant witnesses. So, Mr. Banner, can I just clarify? You're entirely rejecting the line that Justice Kagan drew to your attention, and you're saying that even during the day, let's say it was an hour, you're saying this is all about time. So even if the recess was for an hour for lunch, you are saying that the district judge cannot restrict what the counsel and the client, the defendant, can discuss? No, no, no, no. No, no, no. So, again, this is, this is Perry. Perry says that during a, a, a, a daytime, brief daytime recess, the court can cut off all contact. But what if he doesn't cut off all contact? Well, and then there's... So you're saying that once the district court allows contact, no restrictions? No, no, no, because there's a footnote in Perry. Maybe it's what you're leading up to that, that, that basically the greater includes the lesser. That is, if, if where the trial court can cut off access to counsel, the trial court could allow selective access to counsel. But that, that logic doesn't apply during an overnight recess when the court is held. There's an unrestricted right of access to counsel. So it's all about time. It's all about time. If it was three hours, if it were four hours and it was daytime. Well, look. How do you, how do you decide when it's slow? So, so in theory, there could be some hard cases between 15 minutes in Perry and overnight in, in Getters. I'd say in practice, the lower courts have had no trouble drawing this line. Daytime recesses are usually pretty short. Overnight recesses are much, much longer. It's very easy to tell, to, to, to draw that line. Now, in theory, you know, if a court were to say, look, we're going to have a recess from 9 a.m. to 5 p.m. and we're going to, we're going to be like a vampire court and just do it at night. You know, maybe you get the hard part.  So your rule then is that any time during the day when there is a recess, the district court could, subject to maybe some extreme case where it goes on for too long and you have a vampire court. The court could say, you can talk to your lawyer about everything except the lawyer cannot manage your testimony during the day. Again. During the day. During the day. Again, because the greater includes the lesser. Right. And you can't, but you can't do that at night. Right. Correct. Because at night. It's unrestricted because Getters says that. So there's no, you can't have a line at night. Well, Getters said that. You can have a line during the day, but not at night. Right. Yeah. Because Getters said that, but Getters, Getters was correct in saying that. Right. Getters, Getters pointed out correctly that overnight recesses are, have always been times of intense strategizing, discussion, and so on. And, and whereas Perry said, well, not so for, for, for brief daytime recesses. Let me, if I could. Mr. Back, can I ask you a concrete question? I mean, I can read Getters and Perry, but I'd like an answer to a concrete question. Let me give you an example. Let's suppose that a very important issue in a case is the meaning of Exhibit A. And in preparing the witness to testify, defense counsel goes over what the witness is going to say about Exhibit A. Doesn't put words in his mouth, but you know how it's done. So it's all prepared, a way of dealing effectively from the defense standpoint with witness, with Exhibit A. Then when the witness gets on the stand and is under cross-examination, the witness, you know, the witness departs from that and says things that are quite damaging. Now, during a recess overnight or during the day, well, let's just say overnight, can defense counsel talk to the witness about that and say, look, you know, the understanding was you were going to say this, but you said something different. This is very damaging. That's allowed? Well, sure. Yes. The defense counsel can say, look, when we rehearsed this ahead of time, you were going to say A, B, and C, right? But instead, you've said something totally different, which is D. Now, you've got to tell me, which of these is actually correct? Because if you said D accidentally, then tomorrow we need to correct that in question. Okay, the next day when the defendant takes the stand, everything is cleared up. Values back to, you know, it's a C change, back to what was rehearsed in your words before trial. Can the prosecutor on cross-examination say, well, you said this yesterday. Now you say this today. Did you talk to your lawyer last night? Yes. How long did you talk to your lawyer? Did you talk about this? Can he ask whether they talked about that issue? Well, is that a violation of the attorney-client privilege? I don't think so. I don't think so because as the court has held several times, the proper way to ferret out any impermissible coaching is cross-examination and then the prosecutor arguing to the jury, look, this witness is not credible because this witness was told what to say. I mean, that's very interesting because I thought the core of the attorney-client privilege had to do with communications between the attorney and the client about important matters. Do you think that the prosecutor can go into that? Well, I mean, honestly, I'm honestly not sure. Maybe you're right. I honestly don't know. Well, it matters a lot because you're saying cross-examination is the corrective. All right. Suppose we've got a lunch break, one hour break for lunch. Two absolutely identical defendants. Both, Exhibit A is important for both. In one there's a lunch break and in one there's an overnight break. Does the same rule apply in those two situations? So you're right to suggest... Well, don't tell me what the cases say. Just tell me why it would make sense to have a different rule. Because you're right. I was about to do that. You're right to suggest that there are times when a well-timed overnight recess can be an advantage to a defendant that another defendant who doesn't get an overnight recess wouldn't have. That's absolutely right. But that is a result that is required by the Sixth Amendment because the alternative would be much, much worse. Well, my question, I don't want to get to that, but my question has to do with a lunch break or a 15-minute break during the trial versus an overnight. Right. That's what I'm saying. Different rules. No, different results.  Well, two reasons. One is that that's what Perry said. We're just repeating the holding of Perry. You want to overrule Perry, I'm not going to complain. But that was the holding of Perry. But second, it makes sense because, as the Court said in Getters, overnight recesses have always been times of strategizing, discussions. This is the time when this is like prime time for in the middle of a trial is an overnight recess. Yeah. If the defendant is on the ropes during cross-examination, an overnight recess can be very beneficial.  Once again, I'll continue this. Can I just finish this? I didn't get to it. Okay. I'll get to it. I'll be back. Justice Thomas, anything for Justice Alito? Okay. Once again, two absolutely identical defendants, two trials. Five o'clock, the defendant is on the ropes in cross-examination. Five o'clock rolls around. It would be really helpful for this defendant to have a break and regroup. So the judge says, well, you know what, how much longer is cross-examination going to be? And the prosecutor says, three hours. So the judge says to the defendant, well, you know what? We can go on until eight o'clock, or we can take an overnight break, subject to the restriction that you can't talk about the substance of the testimony. What happens then? Well, your latter alternative would violate the Sixth Amendment. During an overnight recess, you have a right to talk about your testimony with counsel. That's super, super important. So a different result in those two situations. It's the distinction between a daytime recess and an overnight recess. Okay. One last thing. Can you give a succinct definition of coaching? Yes. Coaching is what's not allowed. You said you can't suborn perjury. Impermissible coaching is where the lawyer tries to change the substance of the witness's testimony. So you said before that, just talking ahead of time, you said that the light was green. No, you should say that it was red, because that's more helpful to your case. That's impermissible coaching. In fact, the Court discussed this. Yeah, the lawyer can't say, okay, well, this is what you should say. Right, right. But you know, when you're preparing a witness, I mean, you could do the same thing overnight to get the witness to remember what the witness had said before. Well, look, the other side of this, what I just said was impermissible coaching. Conventional counseling is where the lawyer says, okay, I'm going to ask you this question. What's your answer going to be? The witness, rather, gives the answer. The lawyer says, look, that's a big jumble, you know. Why don't you say it like this, without just suggesting words, without changing it?  Thank you, Robert. Okay. Mr. Sotomayor? Am I correct to say that you say the only order a district court can give overnight is basically the ABA rule? A lawyer can only be prohibited from telling the defendant to give false testimony, correct? That's your definition? Well, I mean, I would say — Counsel, just answer yes or no. Well, okay, mostly yes. Okay. So assume, please, and don't fight me, that I think that Texas' position is more nuanced. And I accept that improper coaching that could be prohibited included walking through potential questions and answers, telling a defendant to use one word and not another word, what generally is thought of coaching. But Texas, and I think Justice Kagan defined their position, they can discuss incidental effects of testimony. And that would include, and pay attention to the list, free bargaining, including telling a defendant that they did lousy and they should take the plea, perjury, you lied and you shouldn't, excluded evidence, the one that you were worried about, other witnesses and where they might be located, contact information. What is missing from that list? Assuming the first bucket. Yeah. You can't coach. You can't give questions and answers. You can't tell them to use a particular word or change a word, even if it's not perjury. Okay. Assume all of that. What's missing from that list? What other thing is missing? Well, that list covers many of the most important things. But what it doesn't include is what you specifically excluded at the start, which is going over questions and answers. All right. So if I say no to that, but say yes to the incidental effect, there's no other topic that you can imagine? You know, off the top of my head, I'm sure there are others. I mean, a defendant and counsel of a million families. So wouldn't the definition that Texas provides, which is the incidental effects of testimony, is okay? That's no line at all. Assuming I believe there is the workability issue, there's no other topic you can think of? Well, if you gave me a little time, I could probably think of more, because there's an infinite number of things. Now, going back to Justice Thomas' question, there's no facts in this record that would suggest that the defendant wanted to talk about plea bargaining or the counsel wanted to talk about a missing witness, wanted to talk about perjury. There's nothing in this record to suggest any of that, correct? That's correct. But the reason is that defense counsel understood the court to be barring all discussion of testimony, period, and the court confirmed that. Counsel said, Judge, I understand what you're saying. I won't manage the testimony. No, no. There's more. So the colloquy here is at pages 4 and 5 of the blue brief. So the court says, what you can't discuss is, this is the second to last paragraph on page 4, the court says the thing that you can't discuss is, the very start of that paragraph, his testimony. And if you look at the top of page 5, defense counsel says, we aren't going to talk to him about the facts that he testified about. The court says, all right, fair enough. We can read the transcript. Thank you, Kevin.  Justice Kagan? Mr. Banner, with respect, you have had a little bit of time since Texas' brief. And Texas, as I think you say in your reply brief, you say, well, Texas has narrowed the conflict a great deal and does come up with this set of examples of how discussion of trial testimony would be relevant to matters of trial strategy and so could proceed during a recess. And it seems to me, like unless you can tell me what other things there are like that, that Texas is basically saying anything that's relevant to larger matters of trial strategy, that should go in one bucket. But if all you're doing is going over the testimony, he said this, you said this, you might sort of think about adding this, he said this, but you explained it to me a little bit better when we rehearsed this. If, you know, is that what you are holding out for, to include that as well? Is that the only thing that stands as a difference between you and Texas right now? I'm not sure, honestly not sure if it's the only thing, but it's a more important thing than you're suggesting because, you know, it's a common situation. So defendant says something completely surprising, something different from what counsel thought the defendant was going to say. Overnight, they need to be able to say, oh, wait a second, when we talked before, you said A, B, and C, but now you're saying D, E, and F, why is that? That is crucial for the assistance of counsel. It could be necessary to prevent perjury, at the very least. Okay, but that's covered by Texas' Well, but that was what I understood your question to exclude. You need to be able to talk about I think what I'm suggesting is that the only difference between you and Texas right now is, like, let's go over the trial testimony and see if we can do it a little bit better. Yeah, so, well, let me put it this way. So our view is that you just have a right to talk about your testimony, period, right? Texas' view, as I understand it, is that the Sixth Amendment protects this list of 11 things you can talk about, but not this other list of seven things that you can't talk about. I don't think that that's fair. I think what Texas is saying, and Texas can correct me if I'm wrong, but it's pretty clear, which is that if the trial testimony comes up because it's relevant to trial strategy decisions, like whether to take a pea bargain, like whether to go find another alibi witness, like what to do about a piece of excluded evidence, et cetera, et cetera, then you're allowed to talk about it, but it has to be incidental in that way to trial strategy decisions. It can't just be, oh, my gosh, you didn't do that very well. Could we try to do it better? Thanks. But that is a trial strategy decision. That is, how we're going to present our evidence is a fundamental trial strategy decision. But I take that to mean a difference. Yeah. I think that's right. I think it's a smaller difference than it used to be. That's right. Thank you. Justice Gorsuch? Justice Kavanaugh? I'm trying to figure out the logic of a line based on a 15-minute recess versus a lunchtime recess versus a lunchtime plus I have another matter I have to handle, so it's going to be a two-hour break recess versus an overnight recess. Well, you know, the court in Perry said it's a thin line, but it's a line of constitutional dimension. If you're asking me to… Where does that come from? Well, yeah. Two things. Where does it come from and what's the logic? Because it strikes me as not especially logical. Okay. Let's talk about the logic first. So the Sixth Amendment guarantees the defendant a right to the assistance of counsel, which should mean at the very least that if the government wants to limit the assistance of counsel, the government better have a very good reason for doing so. Okay. And as I understand the logic of Perry, it's in large part a concern with trial management. If defendants had the right to confer with counsel during every tiny little recess, you know, one minute, ten seconds or whatever, it would just be impossible to run a trial. So there has to be some, I think this is the holding of Perry, there has to be some, some line where a recess is just too short. And what, I mean… And where does that, I mean the opposite part of that rule, where does it come from? The opposite… And it all depends on the, as a question Justice Blackmun asked in the argument in Getters, it depends on the accident of a recess, which is a very… And then, you know, the next page said you can't force a recess. So the whole thing is treating two classes of defendants very differently. And this might be critical to the outcome of the trial. If the trial judge does a recess, you're golden, or at least a long enough recess. Overnight recess. Overnight recess. Long enough recess overnight. But if not, Perry says no. And so those defendants are going to be treated much differently. And does that make a lot of sense? I think it does, because as the court said in Getters, an overnight recess has traditionally been a time of intense discussion and strategizing. And the shorter you go in a recess, the less true that is, until you get to 15 minutes, and it's probably not true. But I understand Perry as really, again, the government needs a very strong reason to override the right to the assistance of counsel. And I read Perry as basically that reason being just the logistics of trial management. Thank you. Justice Barrett? Justice Jackson? So I guess I don't understand your Sixth Amendment argument with respect to the defendant's ability to get that kind of management from his counsel during trial. So is it your position that a defendant has a constitutional right to consult with his attorney about the answers that he's given, you know, turn to the judge and say, I'd like to have a moment to talk to my counsel while he's testifying? No, of course not. There's no right to call a timeout during your testimony. So why not? Of course not. Why not? Well, a trial could barely go on if a defendant- So just pure logistics is what- Trial logistics, I think so, right? Whereas the concern with trial logistics is it vanishes during an overnight recess when everyone's got plenty of time. But Perry suggests that when we have a 15-minute recess already planned and it's there, why couldn't the lawyer talk about this kind of management with his client during that time? In fact, Perry says that's all that would be expected during that time, and that's precisely why we don't allow it. So I just don't understand your thought that the lawyer has the right, when his client is testifying, to talk to him about his questions and answers and coach him as to how to better answer the question. I'm going to quarrel twice with the framing of your question. First, he never does have a right to coach him in the sense of impermissible coaching. He has a right to give advice about the wording of his testimony, not the right- But just not during the trial while he's on the stand, but he can do that in a 15-minute recess? No, he can't do it. Why? What difference does time make if he has the right to coach him in that way? What difference does it make if it's 15 minutes versus overnight? If the Constitution says that a defendant has a right to be counseled with respect to his answers while he's testifying, I don't understand what difference it makes that we have a recess or not or whatever. Okay, so there's a distinction between a daytime and an overnight recess. That's the distinction the court drew in Perry, and like I said, if you want to ask me to justify that distinction, I think it's mostly just a matter of trial management. Because if you think about it, if you say you have a right to counsel, to confer with counsel, during a 15-minute recess, you can see the obvious questions. Five-minute recess, one-minute recess, and so on. And so I think the court just said, look, at some point, a recess is just too short. Thank you. Thank you, counsel. Mr. Wharton? Mr. Chief Justice, and may it please the Court, when a defendant's testimony is paused for a long break, the trial court may tell defense counsel not to either manage the ongoing testimony as we propose or not to discuss the testimony altogether as the United States proposes. Both rules are supported by this Court's precedents. In Getters v. United States, this Court barred absolute no-conferral orders during long breaks, but it never opined on qualified orders. Indeed, Getters himself would have been fine with such an order. In Perry v. Leake, this Court allowed both absolute and qualified orders during short breaks, emphasizing the importance of untainted cross-examination to uncovering the truth. Perry reconciled its holding with Getters by noting that there is a constitutional difference between discussing ongoing testimony, which is not protected, and discussing other trial-related matters, which is protected. And as long as protected matters can be discussed, the right to counsel is preserved. Moreover, by allowing qualified orders, Perry necessarily recognized that counsel can indeed navigate such orders during short breaks, and there is no logical reason why they could not do so during long breaks as well. Accordingly, qualified orders allow trial courts to balance what the Constitution actually protects with the integrity of trial, and that's exactly what happened here. I welcome the Court's questions. After the night passed and you had testimony by petitioner, was there some objection to the judge's order in the sense that petitioner said or his lawyer said that they were not allowed to discuss the matters other than testimony? Not at all, Your Honor. When they came back the next day, the trial court asked them if there was anything to bring up. They said nothing from the defense, Your Honor, and they never filed a motion for new trial. In fact, not only that, on top of that, my friends on the other side, they said the only way to enforce these orders is to say, well, what did you talk about last night? But that didn't even happen. The trial court just started his testimony up the next day, and everybody went on. It was assumed that they followed the Court's order. Mr. Worthen, I appreciate the subtlety of Texas's position as compared to the Solicitor General's more absolute rule, and I just have a couple of questions about that distinction. Please, Your Honor. First, is there any reason why the Court needs to reach the Solicitor General's more absolute rule in this case? The only reason you would have to do that, Your Honor, is if you read the order actually given in this case more broadly. I think that's right. That would be the only reason why we'd have to reach the government's position. Do you agree with that? Yes. Okay. If you read it the way we read it, it would only be a managing order, a no-managing order, not a no testimony. And when we come to that, you've got, I think, the relevant language, page 23 in your brief, where the Court says that, well, actually, where we said in Perry, that an overnight recess would encompass matters that go beyond the content of defendant's own testimony, matters that the defendant does have a constitutional right. Those are protected. If we understand the trial court's order in this case to be consistent with that standard, is there any reason why we need to address the Solicitor General's proposal? No, I don't believe so. Okay. If you believe it's just a – if this is a small – I guess you can conceptualize it like this. If this is broad, this is a narrower kind of order. Give me your best reason why that's the case here. That this is a narrow order? Yeah. Well, so if you look at page 7A of the appendix, he says, I don't want you discussing what you couldn't discuss with him if he was on the stand in front of the jury, his testimony. I'm not sure whatever else you would like to talk to him about when he's on the stand. But ask yourself before you talk to him about something, is this something that manages testimony in front of the jury? And I think what he's saying here is the only thing you'd want to do while he's on the stand testifying is go up there and say, you need to slow down, you need to stop shifting, you need to look at the jury in the eye, you need to remember the things that we talked about as far as the things you should say, here are the questions I'm going to ask you next. That's all managing in the way we define it. And then he tells them, just ask yourself when you're talking to him tonight, you can talk to him about something and even give them an example of potentially if they go into a punishment phase, you talked about something, but if you're going to be managing his testimony, you can't do that. And as Justice Thomas pointed out, there were no questions or follow-up clarification from counsel on that. Exactly. He gave a little bit more clarification on his own after that, but there was no question about, well, can we talk about perjury? If that's maybe a thing, can we talk about a potential plea bargain? They didn't ask any of that. Thank you, Mr. Wharton. Counsel, let's say the defendant and the lawyer go into their, you know, wherever, for the evening recess, and the defendant says something like, counsel, you remember when we were preparing for this, we both agreed we should try to get the jury to focus on Fred. And whenever it's reasonable, I should mention Fred. And I've been doing that, and I notice every time I do that, you know, juror number eight gets a big frown and shakes his head. He doesn't look to me like he likes the idea of talking about Fred at all. So I think that's a bad idea. Now, talking about Fred was your idea. Do you still think it's a good idea? Can the lawyer respond to that question? No. They would have to tell them I'm under a court order not to answer that. So at that point, he tells the defendant who's facing a capital sentence, I'm not going to tell you. It's a very simple thing. We should not say particular things, but let's stop talking about Fred whenever we can. Yes, that would be managing his testimony. That would be coaching and strategizing with him. Do you think that counsel can say, listen, I've been noticing that you've been mumbling, and you're also not making eye contact with the questioner, and it would just be a good idea if you stopped mumbling and made eye contact. Can the lawyer do that in an overnight recess? No, I would consider that to be coaching their testimony. As far as how you present yourself to the jury, I would say that's also the same as the substance of what you're saying. Yes. So the line that you are drawing, and you draw this on page 14, and I just want to make sure that you're still saying what you're saying on page 14, where you say direct discussion, i.e. testimonial management, that is direct discussion of the testimony, can be prohibited. So whether it's the Chief Justice's question or my mumbling question, that's direct discussion. The counsel can still discuss a range of issues related to the testimony, including calling additional witnesses, plea bargains, legal objections, court orders, excluded evidence, and the implications of perjury, among others. So that's still the line that you're drawing. Yes. The touchstone is always the lawyer should contemplate for a moment and ask themselves, is this going to cause me to manage their testimony? The way we define that is coaching, regrouping, strategizing about the testimony itself, not about other things related to the – you can strategize all you want about, should we still bring in the expert witness, things like that. But as far as how the testimony is ongoing, that would not be a – And when Mr. Banner says that's not a line at all, what is your response to that? I think that's a very real line because, again, one, the case law draws that line. And I think the logic of PERI is very strong. They say it's an empirical predicate of our system of justice that an uncounseled witness is more likely to tell the truth than one who has time to pause and consult with their attorney. And they say this rule applies for both witnesses generally and defendant witnesses. They don't draw a distinction between the two. And I think there's a lot of logic to that because if it wasn't logical, then we would have to get rid of this rule for all witnesses. I mean, all witnesses would have to be – let's say we flip it around. Let's just say it's the state star witness. Let's say the victim had lived in this case and it was an aggravated assault case. Why wouldn't the state be able to talk to the witness overnight and coach their testimony if the victim is not doing very well on the stand? The same logic would apply the other way. Thank you, counsel. I think I might have missed the answer. The question was, like, can you tell the witness to stop mumbling? You said he can't say that? No, I would consider how you present yourself to the jury, I consider that to be also coaching, a form of coaching. Look in the eye, stop mumbling, don't talk as quickly, things of that nature. What's the exact formulation, if you have one, of what the judge should say to the counsel before an overnight recess? Well, I would say something like this. If we're a managing order or a testimony generally, a managing order, if I were the judge, I would say, okay, I'm not going to go through an entire list of everything you can talk about. Whenever you're sitting there talking to your client, I want you to ask yourself, is this directly talking about the testimony or is this talking – conceptually, is this something that's a derivative matter from it? And in any event, regardless of what you're talking about, does this require you to coach, regroup, or strategize about the testimony itself? Don't you think lawyers are going to have very different answers to that question when they ask themselves that question? Yeah. I guess the point being, is that line really able to be applied in a neutral and equal manner? They might have some differences of opinion, but we do trust lawyers to use their judgment whenever they are complying with any kind of court order. And our rule also allows any lawyer, if they're just not sure and they really don't want to run afoul of the court's order, to come back and ask the trial court and to say, Your Honor, I wasn't sure about this. Can I get some clarification or even maybe some reconsideration? And let's say it's like 5 in the morning or something like that and they don't want to bother the trial court judge at 5 in the morning. They can wait till the morning and they can explain the problem that they were having and then they can ask for a continuum. That's important. That's your solution to ambiguity for the lawyers is just come back and ask if there's something you want to talk about. That's right. Counsel, let me ask you about the government's, the Solicitor General's position, which we've now established is much broader. It's a no testimony order. What are your thoughts on the workability of that? I mean, the counsel on either side suggests that there are all kinds of discussions that involve trial strategy that are going to be related to the defendant's testimony. So a no testimony order might be sweeping too broadly, or at least that's the argument. Do you have an opinion about that? I think that it fits with the court's case law. Their rule is a much more bright line rule, so in a way it would be easier to comply with. But it's not as flexible. The benefit of our rule is it maximizes the amount of conferral that an attorney can possibly have about the matters they do have a constitutional right to talk about. But at the same time, it excises as much as possible to protect the integrity of trial the things that they don't have the right to talk about, which is the substance of the ongoing testimony. Counsel, Justice Gorsuch asked you, the facts of this case are really your position in this case, which is the judge's order only limited management. But the SG wants us to announce a greater, a bigger rule. Do you agree with that rule? Their rule would, you're asking if I agree with that. I think it would be supported by the case law, yes. All right. How would it be supported by logic? Putting aside, you agree that under any circumstance a lawyer has an obligation, even we've said it in NICS, to not suborn perjury. If a client is suborning, is perjuring him or herself, the lawyer just can't sit there and not do something about that. So that's the close case here. What can they do? You would say they can say to the defendant, if you commit perjury, these are the consequences, correct? Yes. If the government says no, that's really dangerous. How about plea bargain? The government said no in its brief to saying your testimony is really bad. You should reconsider taking this. If the lawyer doesn't do that, he or she is not supporting their ethical obligation to give the defendant information, adequate information to consider a plea, correct? Well, I think in order to comply with court orders, you are able to... Excuse the ethical obligation. Well, yes, to a certain extent. Putting that aside, at what point do we accept the SG's position? Because an order that says don't talk to the person at all, we said in Getters, in Perry, was wrong. I'm sorry, in Getters we said don't talk to the defendant at all. That's correct. So the question is where to draw the line. Should we ignore that line here? Well, I think in Perry they drew the line between testimony and not testimony. I mean, they even go so far in Perry as to say you can tell them not to talk at all because we're so worried that you're going to go talk to them about their testimony. Right, but we said in Getters you can't do it overnight. That was the context. I would say it's a long break. But the problem with, as was brought up earlier, drawing the temporal line between the two is a problem. There's no sense, so I don't. I do between what you can talk about and what you can't.  Yes. Thank you. I want to just read you a potential instruction and tell me if you agree with it or if you see any kind of difference between your position and what I'm going to say and what the SG says. What if the court says, or what if we were to say that qualified conferral orders are okay if they tell the lawyer, listen, you can't talk about the content of the testimony or the manner of its delivery, but you can discuss any strategic consequences of the defendant's testimony, such as whether to take a plea, whether to call another witness, etc. Are you okay with that? Yes. Okay. And I'll ask the SG whether the SG thinks that's consistent, too. Mr. Worthen, I just wanted to quickly follow up on Justice Sotomayor's line of questioning. And I wonder whether unconstitutional conditions doctrine might be in play. If you were to say that a lawyer couldn't advise a defendant during a long break about collateral consequences from his testimony, if I can't advise you, boy, it's time to take that plea. If I can't tell you about the consequences of perjury. Now, maybe I'm excused as an ethical matter because I'm under a court order, perhaps. But I would have thought that our unconstitutional conditions doctrine would have something to say about unnecessarily chilling the Sixth Amendment right at stake here. Now, are you asking from the no management perspective or the SG's perspective? The SG's perspective. I wonder whether that implicates unconstitutional conditions. I don't want to put words in your mouth, but I think the SG would say that there's two ways to go about dealing with, say, perjury. One, if you're still on direct, you can try to fix it up as you're going on direct. Or if it happens on cross-examination, you can try to fix it up on redirect. Another option would be the defendant finishes his testimony. You tell the trial court something very important came up during his testimony. If we could just have a moment to talk, if we can just have a little bit of time. Then at that time, you talk to him. You investigate whether or not perjury happened. You remonstrate with him about your ethical obligations and his obligations. And then you would call him back as a witness. And then if the trial court were to be like, why are you calling him back as a witness? You could either say, it will become clear in just a moment, your honor. Or you could tell them, you just have to tell them straight out, perjury was committed and I have to fix it before the end of this proceeding. One other thing I just want to, since I have a little bit of time, is just the rule that we're advancing. It is the rule that I believe supports federalism. It's the rule that, what they're asking to do is put a rule that is virtually unalterable because it would require a constitutional amendment. And we very rarely micromanage trial courts in that manner with these kind of constitutional rules. Let me ask you about your perjury exception. So you say that the defense counsel could advise the defendant when there's a break during cross-examination, an overnight break during cross-examination, to avoid perjury. Doesn't that, would that allow defense counsel to help to clean up all inconsistencies between what the defendant said on direct and what the defendant admitted under cross? So, could you phrase that one more time, your honor, just to make sure I understand. Yeah, on direct, the defendant testifies the way it was anticipated before trial and says A. And then on cross, the defendant messes up and says B, something that's completely inconsistent. Doesn't that allow the defense attorney to say, look, you're under oath, you can't commit perjury, clean up what you said on cross-examination, that would be allowed? I would say this, you would want to investigate with them to see if there actually was perjury, and then you need to remonstrate with them. And then you would tell them, okay, tomorrow what we're going to do is we're going to clean this up. I'm not going to tell you how because I'm under court order, but just know, be expecting that tomorrow this is going to be fixed. You don't need to tell them, okay, here's the best thing to say, or, you know, true or false, this is the best thing to say. I'm going to ask you these particular questions, so be expecting these questions. That's all strategizing. You couldn't do those things. But what you could do is just establish that perjury was committed and let the defendant know this is going to be dealt with tomorrow. How about the same thing with the question of plea bargaining? Could defense counsel say, wow, that was not good because you were mumbling, because you were scowling? You better correct all that stuff. I don't think that would be allowed. What we say in our brief is that you could tell them, we could say, you need to take the plea bargain. You might need to take the plea bargain because the state's case was so strong, but also if he just did a terrible job. And if the defendant says, well, how did I do a terrible job, you would just have to tell them I'm under court order. I cannot tell you why that's true. But you need to, in my professional opinion, you need to understand that the best course of action for you now is to take a plea bargain. Now, why is that, Mr. Worthen? I mean, if you had said, as you do on page 14, that you can talk to the defendant about trial testimony when it's incidental to a big trial strategy decision, like whether to take a plea bargain, and the person says to you, I don't understand, like, what do you think went wrong? Like, why was it so serious that I now have to tell this? And you say, I can't tell you, just trust me that you have to take a plea bargain. And the person says, what do you mean, trust me? I mean, I want to understand, like, why this went so wrong that now I have to completely alter my understanding of what I'm supposed to do here. Like, shouldn't the lawyer be able to say, here's what went wrong, here's why it's really consequential, here's why you should take a plea bargain? My time is up, but would I be able to answer your question? Sure. So the reason is because you're going to be managing their testimony. And the whole point of the order and all the logic behind Perry is that you should not be able to do that, because you're basically telling the defendant, well, if you start mumbling, you start looking the jury in the eye and you start giving clearer answers, well, then you won't have to take that plea bargain. It would be too easy of a workaround. Now, here's another thing you could do. You could tell them, I think this is going really badly. You probably need to take, in my professional judgment, you need to take this plea bargain. And if they ask why, you can say, I can't tell you that right now, but let's talk again whenever your testimony is over and see how it goes from this point on out and see where we are then. Thank you, Counsel. Justice Thomas? Justice Alito? Justice Kagan? Justice Gorsuch? I guess I would have thought that discussion would be incidental to the plea bargain. You say that you can discuss direct testimony so long as it's incidental to some other purpose. Why wouldn't it have been incidental in that case? The plea bargaining is incidental. Discussing a plea bargain is a general matter, but the main thing about our rule, at least, is that you not then turn that into an opportunity to manage the upcoming testimony. Justice Scanlon? Justice Barrett? Justice Jackson? Thank you, Counsel. Thank you. Mr. Barber? Mr. Chief Justice, and may it please the Court, in Perry, this Court held that a criminal defendant, like any other trial witness, has no right to discuss his testimony with counsel after that testimony has begun. That principle is consistent with Getters and with a long history of sequestering witnesses in order to safeguard the truth-seeking function of trial. Because a defendant has no right to discuss his testimony midstream, in order, barring discussion of only that testimony and nothing else, is constitutional, just as a defendant has no right to a timeout in the middle of testimony to confer with counsel. Petitioner's claim reduces to the assertions that qualified conferral orders are unworkable because testimony can't be distinguished from other matters and unnecessary because courts can just prohibit coaching. But Perry squarely rejects both of those propositions, and it explicitly endorses qualified orders of the kind that was issued here. The Court should therefore reject petitioner's request to categorically foreclose such orders as a matter of constitutional law for not only the federal courts but all 50 states. I welcome the Court's questions. Under your approach, what can counsel discuss with the petitioner? So there are many other trial matters, Justice Thomas, that the defense may want to discuss from other witnesses' testimony to physical evidence to strategies for the upcoming closing argument to grounds for appeal, sentencing matters. Under our line, they just couldn't discuss the testimony itself, and we think that's a clear and workable line. We don't disagree with Texas's proposed narrower approach to account for the narrower scope of the order here, but we think our line is very clear and very workable and consistent with the Sixth Amendment. Why is your line better? We think it's somewhat clearer because we do think that there is some ambiguity about what management would mean, as Justice Gorsuch was getting at, how you account for incidental discussion of the testimony versus non-incidental. So, for example, we agree that there would be real concern to allowing the defense to say your testimony about this specific issue didn't go well today, and by virtue of those defects in your testimony, you should now consider pleading guilty. That does seem to us, as Mr. Worthen suggested, an obvious workaround, and we do think that that would threaten the truth-finding function of trial. So our rule accounts for that. We think it's a reasonably clear rule because, first of all, it's drawn straight from this Court's decision in Perry. This is exactly how the Court phrased the scope of permissible qualified orders in footnote 8 of that decision. And defense lawyers could apply it, I think, pretty easily. There are always going to be edge cases under any rule, but the defense lawyer can always ask himself under our rule, is this a conversation that I would be having with my client, irrespective of whether he was testifying in this case or not? And if the answer is yes, then he can have the conversation with the defendant, and if the answer is no, then he should abstain. I had trouble getting my hands around what you meant by this on page 28 to 29 of your brief. You list a variety of matters that are pertinent to the trial, and then you said those and other matters may be related to the defendant's testimony in the tangential sense that they bear on the trial context in which the testimony is taking place. A defendant and his counsel can conceptually discuss such matters without veering into the problematic ground of the ongoing testimony as such. I find that a pretty hard line to get my hands around. I think, Mr. Chief Justice, our point there was that just because the testimony necessarily relates to other matters that the defense may want to discuss, the kind of matters that I was going through with Justice Thomas, that doesn't mean that you have a constitutional right to discuss the testimony itself. So, for example, if we went back to the plea bargain example, if the defense lawyer went into the recess and said to his client after the testimony had begun, I now advise you that you should pursue a plea bargain. We think that would be permissible, even if in the defense lawyer's head, part of the reason why that advice was being given was because he was aware, in the parlance of this Court's decision in Perry, he was taking consideration of the testimony. That doesn't mean that you're discussing the testimony itself, and that doesn't mean that the kind of dangers to the truth-seeking function of trial are presented by that kind of discussion. So he can ask them about all sorts of things that bear on the testimony, right, that might be pertinent in any other context, that usually say, Are they the sorts of things you would talk about with your client without regard to the testimony, or can the testimony at least narrow the topic of conversation you're going to have? I think that, again, the topics that you would discuss can certainly relate to the testimony. We're not disputing that because the testimony is necessarily related to the other issues that are going on in the trial. All we're saying is that even under our rule, which is somewhat broader than text as rule, it is not a rule that you can't discuss, as Justice Jackson was suggesting, anything that relates to the testimony. So you can talk about things that relate to the testimony, but you can't discuss the testimony as such. Correct. But what if I don't understand? You really are objecting to discussing any kind of downstream effect or strategic consequence, including the need to call another witness because the defendant on the stand may have introduced a topic that now the lawyer wants to say, Do you know anyone who, you know, you said X, so it would be good for us to call a witness to address that. Is there someone we can call? Not protected. Correct. I think a couple points on that, Justice Barrett. So first of all, we are acknowledging the fact that our rule is partly prophylactic in nature, so we're not saying that the Sixth Amendment rule needs to be tailored specifically to communications that directly impede the truth-finding function of trial. We think that there is some virtue to having a clearer, more workable rule, even if you can imagine discussions under that kind of rule that would be prohibited that may not directly affect the truth-seeking function of trial. There's no, like, narrow tailoring requirement here. The other important point I think I need to make is that, you know, we can all readily imagine, and we've been discussing this morning, important conversations that we have the intuition the defense should be able to have, but if Petitioner got his wish and if all defense testimony or defendant's testimony were conducted continuously without a break, then by definition this kind of opportunity for those discussions would not arise. So the opportunity to discuss potential perjury wouldn't come up because there wouldn't be a recess fortuitously intervening. So the notion that the Sixth Amendment rights of the defendant should turn on the fortuity of that recess strikes us as far-fetched, and that's what drove us to adopt it. Well, that's what we did. You may not like it, that fortuity, but we created a difference between Perry and Getters. And I don't think the difference was based, as you think, on the truth-seeking functions. That has a reason for the order. But Getters was very clear that there is an independent Sixth Amendment right for advice of counsel, and what you're seeking to do is truncate that right overnight so that if the defendant mentions the name of a witness, he says, do you have the contact information for it? He's not affecting the testimony. He's not asking the witness to change it. He's not talking or evaluating the testimony. He's simply saying, give me an address, and you're saying no. I wouldn't say no if you're just asking for the address. Well, but you see you're trying to cabin what is obviously not logical in your extreme position. The same thing with the plea bargaining situation. I find it impossible for a lawyer to say, I think you should consider a plea bargain now, and that the defendant is not going to say, but why? And the why has to be my considered judgment. That gets me from here to the corner and back with nobody paying me, okay? You need to say something. A model rule says, a lawyer shall explain a matter to the extent reasonably necessary to make an informed decision. Now, if you have a rule that says you can't manage the testimony, that you can evaluate the testimony and say it was pretty bad for lots of reasons, that should be okay. So I certainly want to repeat, Justice Sotomayor, that we don't disagree with Texas's rule, and if you wanted to say that because this order in this case was narrow enough to just prohibit management of the testimony, we're going to say that's permitted by the Sixth Amendment, that's fine with us, as long as you don't suggest that that's all that courts can do. That's the note. Because I think that's an important point. That is an important point, because what you're asking us to do is to potentially say you can bar all conversation. About the testimony, but you can leave that matter for another day. Why? Why would we do that? I guess I just don't understand. If this order is narrow enough to cover the concern about problems with truth-telling in the trial, because we are keeping the defense counsel from managing the way that it's been described, why would we go further to ensure that there could be problems with the Sixth Amendment by suggesting that a court could do more? I think that just because this order satisfies the Sixth Amendment doesn't mean that a somewhat broader order could not, especially when we account for the fact that trial judges can be trusted to tailor these orders, depending on the specific nature of the case, the nature of the defendant, the nature of defense counsel. We do think that there is some virtue to a somewhat broader rule, just in the same way that, and if I may continue, Mr. Chief Justice. Briefly. Just as we ban defendants regularly from having any contact with witnesses in the trial, we don't ask can they be banned just from having threatening or detrimental contacts with witnesses. It's the same kind of principle here. Thank you. Justice Thomas? Justice Kagan? Justice Barrett? What's your view of what the original text and history would tell us about the proper rule pre-getters? That's a very good question, Justice Kavanaugh. So the root meaning of the Sixth Amendment counsel clause is simply the right to retain counsel. The amendment was adopted, or that clause was adopted to abrogate the common law rule that felony defendants generally had no right to counsel at all. One of the things that we think is very important in this case is that even the root meaning of the right to counsel, which is the right to counsel of choice, is subject to broad limitations. This court has said many times that a trial court has wide latitude to balance that right, that core right against countervailing considerations like fairness, like the demands of the court's calendar, and that's another reason why it's appropriate to have a somewhat broader prophylactic rule and to reject a kind of narrow tailoring requirement in this context. Justice Jackson? I guess I'm still just confused as to why a narrow tailoring requirement. Can you just say more in response to Justice Kavanaugh? I mean, we have a Sixth Amendment right. I think you agree to have counsel have access to his client about trial strategy, about matters that he's allowed to talk to him about. And so in a world in which your prophylactic rule potentially encroaches on that because some of those trial strategies are intertwined with his testimony, I don't understand why we would give the court the ability to preclude discussion of any testimony. So, Justice Jackson, we're just drawing the line that this court drew in Perry, and I think this is what Justice Kagan was getting at earlier. The court in Perry drew the line at discussion of testimony versus discussion of other matters, and that's the line that undergirds the basic holding of Perry. The idea is that because during the 15-minute recess at issue, which is taken sort of in the heat of the testimony when it's top of mind, the only thing likely to be discussed during that kind of recess is the testimony. That's the way the court phrased it. And if we read that to mean testimonial management, what then? Not strategy as a result of the testimony because we don't time for that in 15 minutes. The 15-minute window in Perry when it says you can only talk about testimony, what if we take that to mean you would be coaching your witness during that 15 minutes about what he just said or what he should say, and that's off-limits? Right. So if you agree with Texas and with us that the order here is reasonably read as just prohibiting management of the testimony, then this case is a very easy case because Perry clearly says that that is constitutional under the Sixth Amendment. Leave for another day whether the SG is right about this potential broader rule. That's all you need to do. Thank you. Thank you, counsel. I'd just like to make three quick points, if that's all right. First, under the Texas standard, the court should reverse. The trial court and the state appellate courts understood the order to bar many of the kinds of discussion that Texas now says is permitted. Second, the court's questions to my friends here suggest that the supposed line that Texas is drawing is no line at all. Lots of questions about what about this, what about that, and so on. Different trial courts are going to draw that line differently from the way my friend from Texas draws it. Defense lawyers will have no idea what they're allowed to discuss and what they're not allowed to discuss. And so, of course, they're going to err on the side of not discussing as trial counsel did here. Finally, for decades now, the majority rule in the United States has been that the defendant has a right to the complete discussion of testimony during overnight recesses. It's been a very clean rule, unlike the rule that Texas and even the United States advocates. And it's the right rule because strategizing about testimony is one of the most important things that defense lawyers do. It's one of the most important kinds of assistance that defense counsel provides. Thank you, counsel. The case is submitted.